SCHERER SMITH & KENNY LLP
Denis S. Kenny (SBN 178542)
Ryan W. Stahl (SBN 267306)
140 Geary Street, 7th Fl.
San Francisco, CA 94108
Ph: (415) 433-1099
Fax: (415) 433-9434
E-Mail: denis@sfcounsel.com

Attorneys for Plaintiff Foundation for Anime and Niche Subcultures

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FOUNDATION FOR ANIME AND NICHE SUBCULTURES, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS ANIME CONVENTIONS, a Texas nonprofit corporation; MELISSA HENDERSON, an individual; CORRINE HOWLETT, an individual; and DOES 1 through 10,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>**(1) CONVERSION**<br>**(2) UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

This is an action arising under the laws of the state of California. As set forth below, defendants Texas Anime Conventions ("***TAC***") Melissa Henderson ("***Henderson***") and Corrine Howlett ("***Corrine***") received and retained / used funds of plaintiff Foundation for Anime and Niche Subcultures ("***FANS***") for their own use that they had no right to. FANS at all times has remained entitled to said funds and never consented to their taking or use by TAC, Henderson or Corrine.

-1-

COMPLAINT CASE NO:

## THE PARTIES

1. FANS is a California nonprofit public benefit corporation with its principal place of business in San Jose, California. FANS's principal business is to promote awareness and appreciation of and stimulate interest in Asian culture, media, and underrepresented subcultures, primarily through the presentation of conventions and events that educate and celebrate ongoing contributions of subcultures to art and mainstream culture, and to support local charitable organizations.

2. TAC is a Texas nonprofit corporation with its principal place of business in Austin, Texas. TAC's principal business is running conventions, such as OkashiCon, an annual Japanese Cultural event that is held in Pflugerville, Texas.

3. Henderson is an individual residing in Texas. She is the founder of TAC and at all relevant times alleged herein was an authorized representative and officer / director of TAC.

4. Corrine is an individual who has resided in Texas and currently resides in Virginia. On information and belief, during the relevant time period, Corrine served as an authorized representative of TAC, including at one point, as TAC's CEO.

5. The true names and capacities, whether individual, corporate, associate, or otherwise of DOES 1 through 10 are unknown to FANS, who therefore sues these defendants under said fictitious names. FANS is informed and believes that each of the defendants named as a Doe defendant is legally responsible in some manner for the events referred to in this complaint, and is either negligently, willfully, wantonly, recklessly, tortuously, strictly, or statutorily liable or otherwise, for the injuries and damages described below to FANS. If applicable, FANS will in the future seek leave of this court to show the true names and capacities of these Doe defendants when they have been ascertained.

6. The named defendants are collectively referred to in this complaint as ("***Defendants***"), unless specified otherwise. FANS is informed and believes, and upon such information and belief alleges that, at all times and places mentioned herein, Defendants, and each of them, were the agents, ostensible agents, co-conspirators, servants, employees, employer, partners, joint venturers, affiliates, franchisees, subsidiaries, and/or alter egos of each other, and

that each of them was at all times and places mentioned herein acting in concert and within the purpose and scope of such conspiracy, service, agency, ostensible agency, employment, partnership, joint venture, affiliation, subsidiary relationship, and/or franchise.

8. FANS is informed and believes and thereon alleges that each defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, and/or aided and abetted the conduct of all other defendants. As used in this complaint, "defendant" means "defendants and each of them," and refers to the defendants named in the particular cause of action in which the word appears.

9. At all times mentioned herein, each defendant was the co-conspirator, agent, servant, employee, and/or joint-venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other defendants.

10. FANS is further informed and believes and thereon alleges that TAC was at all times relevant the alter ego corporation and entity of Defendants by reason of the following:

   a. FANS is informed and believes and thereon alleges that Defendants and each of them, at all times herein mentioned, dominated, influenced, and controlled TAC and the officers thereof as well as the business, property, and affairs of TAC.

   b. FANS is informed and believes and thereon alleges that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between Defendants and each of them and TAC; the individuality and separateness of Defendants and each of them and TAC has ceased.

   c. FANS is informed and believes and thereon alleges that, at all times since its creation, TAC has been and now is a mere shell and naked framework which Defendants and each of them used as a conduit for the conduct of their personal business, property, and affairs.

  d. FANS is informed and believes and thereon alleges that, at all times herein mentioned, TAC was created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Defendants and each of them, whereby the income, revenue, and profits of TAC were diverted by Defendants and each of them to themselves.

  e. FANS is informed and believes and thereon alleges that, at all times herein mentioned, TAC was organized by Defendants and each of them as a device to avoid individual liability and for the purpose of substituting financially irresponsible entities in the place and stead of Defendants and each of them, and accordingly TAC was formed with capitalization totally inadequate for the business in which said entity was engaged.

  f. FANS is informed and believes and thereon alleges that TAC may be insolvent.

  g. By virtue of the foregoing, adherence to the fiction of the separate corporate existence of TAC would, under the circumstances, sanction a fraud and promote injustice in that FANS would be unable to realize upon any judgment in its favor.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. FANS is a citizen of California. Each of the Defendants resides outside of the state of California and is not a resident of California.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9. The Northern District of California has personal jurisdiction over Defendants and each of them because a substantial part of the conduct alleged against Defendants in this action and giving rise to the claims alleged occurred in California and in this District.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

COMPLAINT CASE NO:

11. Pursuant to N.D. Cal. Local Rule 3-2(c) and (d), intradistrict assignment to the San Jose Division is proper because a substantial part of the events that give rise to the claims asserted occurred in and around San Jose, the location of FANS's office and bank accounts from which the subject funds were wrongfully taken and transferred to Defendants who, in turn, received and thereafter retained / used said funds for their own use during the relevant period.

**FACTS COMMON TO EACH CAUSE OF ACTION**

**A. Defendant's Receipt and Use of Misappropriated FANS funds**

12. FANS regularly organizes annual in-person conferences that generate significant revenue for the organization and support its operations.  Previously, Craige Howlett ("*Howlett*") rendered volunteer services to FANS including serving as volunteer Chief Financial Officer, a position he held during the relevant period.  In his role of CFO, Howlett gained the trust of other volunteer service providers, and officers and directors of FANS as well as an intimate knowledge of FANS's finances, including access to all of FANS's financial accounts.

13. In or about August 2022, it was discovered by FANS that Howlett had been misappropriating funds from FANS.  Specifically, Howlett personally confessed in written and oral correspondence to FANS to having misappropriated FANS funds (which he initially estimated at approximately $248,000) spanning the period between September 2020 and August 2, 2022.  Based on the findings of a recently completed forensic accounting investigation, FANS believes the total amount of funds Howlett misappropriated to be over $656,000. FANS has reported Howlett's malfeasance to law enforcement agencies; so far, no affirmative action has been taken. However, FANS's efforts to elicit law enforcement agency restitution assistance are continuing.

14. Through its investigation and discovery into Howlett's misappropriation of funds from FANS as further detailed below, FANS discovered that Howlett served as a corporate representative of TAC managing TAC's finances during the period in which he was misappropriating funds from FANS and, in turn, he directed / transferred some of those funds to Defendants and Defendants' designees (including paying attorneys' fees directly to TAC's then-counsel of record in the Tetra Action, as referenced below).

15. During the relevant period, Corrine served as a corporate representative of TAC. Corrine has represented to others, including FANS, (and Howlett has admitted in discovery in his bankruptcy proceeding, referenced below) that Corrine was aware that her then-husband Howlett (they were divorced in or about January 2023) was misappropriating funds from FANS and, in turn, accepted and used the misappropriated FANS funds for her own benefit and, on information and belief, knew misappropriated FANS funds were being diverted to and used by TAC and Henderson. In fact, Corrine published in writing, that she knew about Howlett's embezzlement and was spending the money to fund her personal expenses.

16. On or about July 26, 2018, TAC and Henderson filed a lawsuit against Tetra Events, LLC, Marco Del Basque, David Scott, IV, Matthew Newman, and Michael Loredo ("***Loredo***") in the District Court of Harris County Texas (the "***Tetra Action***"). In the Tetra Action, TAC and Henderson sought injunctive relief and asserted claims for defamation, business disparagement, and tortious interference with prospective business against the named defendants. On or about February 24, 2023, Judgment was entered against Loredo in the Tetra Action in favor of TAC and Henderson in the amount of $636,420.63.

**B. Howlett's Bankruptcy and Subsequent Settlement with FANS; Corrine's Receipt and Use of Misappropriated FANS Funds**

17. On or about May 30, 2023, Howlett filed a Chapter 7 bankruptcy petition in the Western District of Texas (the "***Howlett Bankruptcy***"). In his petition he listed a debt owed to FANS incurred from 2020 through 2022 in the amount of $350,000.

18. On or about April 5, 2024, FANS filed an adversary complaint in the Howlett Bankruptcy alleging claims for fraud, breach of fiduciary duty, money had and received, and unjust enrichment as well as claims alleging Howlett's debt owed to FANS was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), -(4), and -(6).

19. On or about April 5, 2024, FANS entered into a settlement agreement with Howlett related to the claims in the adversary complaint against Howlett in the Howlett Bankruptcy. Under the settlement, Howlett agreed to make payments from exempt assets to FANS totaling $122,795.46 in an effort to repay the stolen FANS funds, which amount falls far below the over

-7-

1  $656,000 in funds Howett took from FANS.  Under the settlement agreement, FANS's release
2  with Howlett applies only to Howlett individually and did not and does not release any claims
3  FANS may have against any individuals, business entities or other organizations with which
4  Howlett may have been affiliated.

5        20.    In addition, based on agreed upon settlement terms, Howlett cooperated with
6  specified investigation and discovery procedures directed by FANS.  During this process, Howlett
7  testified under oath by oral examination (in May 2024) and provided verified written discovery
8  responses and documents (between May and September 2024) confirming that he told his then-
9  wife, Corrine, of his misappropriation of FANS fund before he personally (and only partially)
10 confessed to FANS of his misdeeds in August 2022. In addition to the evidence discussed above
11 concerning Corrine's written publication(s) that she knew about Howlett's embezzlement and
12 was spending the money to fund her personal expenses, this further demonstrates that Corrine
13 knew Howlett was misappropriating funds from FANS, she used those misappropriated funds for
14 her own benefit and she knew that TAC and/or Henderson was using FANS funds including the
15 funding of attorneys' fees / costs in the Tetra Action.

16     **C.  TAC's and Henderson's Conversion of FANS's Funds**

17       21.    Through the above-referenced discovery in the Howlett Bankruptcy and further
18 investigative efforts, FANS recently learned that Howlett used funds he wrongfully obtained from
19 FANS to finance the Tetra Action.  Howlett characterized the use of these funds as "donations"
20 he made to TAC and Henderson, but as further set forth below this is untrue.  Investigation and
21 discovery in the total amount of these funds is in the tens of thousands of dollars and FANS
22 believes this amount exceeds the jurisdictional minimum of this Court.

23       22.    Howlett and Henderson have a personal relationship and have known each other
24 for years.  Henderson previously worked with Howlett in planning and putting on another anime
25 convention in Texas, OkashiCon.  According to Laredo, he had begun to suspect Henderson of
26 attempting to solicit away volunteers and resources from the Texas-based anime convention he
27 was running at the time, IkkiCon. Further according to Laredo, both Howlett and his then-wife,
28 Corrine, had also worked at IkkiCon, handling registrations, both pre-purchased and day-of

1  registrations where they were responsible for handling and processing cash payments.

2  23. On or about July 23, 2018, Matthew Newman, the managing member of Tetra
3  Events, LLC, sent Henderson an email with the subject line, "Tetra Events, LLC Undisclosed
4  Loans." In it, he accused Henderson of misappropriating $9,200 in Tetra Events, LLC funds.
5  This included a "payment of $4,200 that was clearly made to [Henderson's] private PayPal
6  account" and another "$5,000 cash" payment that Henderson "agreed to received . . . via
7  electronic communication." The email concluded, "Pleas[sic] advise within 72 hours what your
8  plan is to repay the $9,200 to Tetra Events, LLC for the undisclosed payments you received on
9  Tetra Events, LLC's behalf."

10  24. Henderson's receipt of the above email has a time stamp of 4:26 PM on July 23,
11  2018. Hours later on the same date she forwarded the email to Howlett in an email with a
12  timestamp of 8:05 PM on July 23, 2018. The Tetra Action was filed by Henderson and TAC only
13  three days later, on July 26, 2018. As referenced above, the Tetra Action litigation spanned several
14  years until settlement in or about February 2023.

15  25. During the relevant period when Howlett misappropriated FANS funds, Howlett
16  was an authorized agent of TAC (which, as noted above, is a non-profit entity founded by
17  Henderson who, on information and belief, continues to serve as chairperson of the Board) and
18  managed TAC's finances. Indeed, in support of a motion for summary judgment in the Tetra
19  Action, Howlett, on or about January 27, 2022, authored a declaration (the "**Howlett**
20  **Declaration**") in which he stated as follows: "I am a corporate representative of Texas Anime
21  Conventions. I work with Melissa Henderson. I am knowledgeable about anime conventions in
22  Texas and around the Austin area. I am also familiar with the profits generated from those
23  conventions." The Howlett Declaration appears to have served as the basis for the damages award
24  that Henderson and TAC received against Laredo in the Tetra Action.

25  26. As noted above, Howlett characterized certain contributions he made to TAC and
26  Henderson to pay for legal fees as "donations," but he appears to have been TAC's authorized
27  representative and therefore acting on its behalf when these "donations" were made. Further, in
28  testimony given in the Howlett Bankruptcy Howlett admitted to making additional payments

directly to the attorneys, Hoover Slovacek, LLP, during the Tetra Action to pay for the representation of Henderson and TAC.

## FIRST CLAIM FOR RELIEF

### Conversion

### (Against All Defendants)

27. FANS realleges and incorporates by reference the allegations set forth in each preceding paragraphs of this complaint.

28. During the relevant period, Defendants accepted and utilized FANS funds for their own use and benefit.

29. Defendants knew of the source of the FANS funds, which were intentionally taken by Defendants and/or accepted by Defendants with knowledge that they were wrongfully in possession of these funds.

30. At no point did FANS authorize, permit, approve of, or consent to Defendants taking or utilizing the FANS funds.

31. At all times alleged herein, FANS was entitled to possession of the FANS funds.

32. At all times alleged herein, Defendants have wrongfully retained and used the misappropriated FANS funds for their own benefit.

33. Defendants' unlawful misappropriation of the FANS funds damaged FANS in an amount exceeding the jurisdictional minimum, including restitution of the misappropriated funds and costs and fees incurred by Plaintiff for recovery of the same.

34. The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and/or punitive damages.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

### (Against All Defendants)

35. FANS realleges and incorporates by reference the allegations set forth in each preceding paragraphs of this complaint.

COMPLAINT CASE NO:

36. FANS has conferred a benefit on Defendants, in excess of the jurisdictional minimum, based on Defendants' receipt and usage of FANS funds which funds were not intended by FANS to be for Defendants' use.

37. Defendants have received and unjustly retained and/or used for their benefit FANS's misappropriated funds which they knew or should have known were not intended for Defendants.

38. Defendants have been unjustly enriched in the amount of the FANS funds they wrongfully retained and /or used and are entitled to full restitution of the same in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, FANS prays for relief as follows:

A. An award of damages and restitution;

B. Costs of action incurred herein, including expert fees;

C. Punitive damages;

D. Attorneys' fees;

G. Pre-judgment interest, as provided by law; and

H. For such other and further relief as the Court may deem fair and proper.

Dated: October 11, 2024                           Respectfully submitted,

_____
DENIS S. KENNY
RYAN W. STAHL
SCHERER SMITH & KENNY LLP
Attorney for Plaintiff
FOUNDATION FOR ANIME AND NICHE SUBCULTURES, a California nonprofit public benefit corporation

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which Plaintiff has a right to a jury trial.

Dated: October 11, 2024

Respectfully submitted,

_____
DENIS S. KENNY
RYAN W. STAHL
SCHERER SMITH & KENNY LLP
Attorney for Plaintiff
FOUNDATION FOR ANIME AND NICHE SUBCULTURES, a California nonprofit public benefit corporation